**The People, for use of State Board of Health, Appellee,
v. Leonard D. Koehler, Appellant.**

**Gen. No. 14,025.**

1. JURY TRIAL—*act of June 17, 1903, construed.* This act which provides in substance that no person shall be imprisoned for non-payment of a fine, etc., except upon a conviction by jury (unless the jury is waived in writing), strips the trial judge of the power, where a jury has not been waived, to give a peremptory instruction to find the defendant guilty in an action coming within the scope of the act.

2. EVIDENCE—*when transcript not competent to establish prior conviction.* Prior conviction for violating the statute prohibiting the practice of medicine without a license, cannot be shown by a transcript which fails to show jurisdiction of the person alleged to have been so convicted.

3. EVIDENCE—*what competent as tending to show license to practice medicine.* *Held,* that the particular evidence in this case was competent upon behalf of the defendant to show that previous to the alleged commission of the offense he was possessed of a license to practice. (The full court not concurring.)

4. STATUTORY LAW—*how penal statutes construed.* A penal statute is to be strictly construed, but is not to be construed with such technicality as to defeat its object.

Action commenced before justice of the peace. Appeal from the Criminal Court of Cook county; the Hon. MERRITT W. PINCKNEY, Judge, presiding. Heard in this court at the October term, 1907. Reversed and remanded. Opinion filed December 7, 1908. Rehearing denied January 7, 1909.

CHARLES J. O'CONNOR, for appellant.

CARL R. CHINDBLOM, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

Leonard D. Koehler, the appellant, was prosecuted in April, 1906, before a justice of the peace of Cook county, at the instance of the State Board of Health, but in the name of The People, in an action entitled on the justice's docket and transcript "Action—practicing medicine without a license, violation of State Board of Health Act." On the trial he called for a jury and the jury returned the verdict: "We, the jury, find the issues for the plaintiff and find the defendant indebted to the plaintiff in the sum of Two Hundred Dollars for practicing medicine without a license in violation of Section 9 of an Act to regulate the practice of medicine in the State of Illinois, approved April 24, 1899, in force July 1, 1899, and find that the said defendant is guilty of practicing medicine as defined in Sections 2 and 3 of said Act." Thereupon the justice entered judgment that the plaintiff have and recover of the defendant two hundred dollars and costs; and that "defendant be committed to the county jail of Cook county, Illinois, until fine and costs are paid, not

to exceed ninety days, or until discharged by due process of law.''

From this judgment Koehler appealed to the Criminal Court of Cook county.

In the Criminal Court, under date of February 7, 1907, is the record that ''the parties hereto come by their respective attorneys, and the said defendant now here says that he is not guilty as charged.'' The coming of the jury being then noted, the record proceeds:

''After hearing the testimony of witnesses the court instructs the jury to find the issues for the plaintiff and for a verdict say: 'We, the jury, find the defendant guilty and assess the fine at Two Hundred Dollars'.''

There is no record (other than this) of the return of a verdict either in the common law record or in the bill of exceptions.

The record merely thereafter notes a motion for a new trial by the defendant, the overruling of that motion, and this judgment:

''Therefore it is considered, ordered and adjudged by the court that said defendant be fined in the penal sum of two hundred dollars for the benefit of said plaintiff and pay all costs of these proceedings to be taxed, and that execution issue therefor. And it is further ordered by the court in default of payment of said fine and costs, the said defendant be committed to the county jail of Cook county until fine and costs are paid, providing such term of imprisonment does not exceed ninety days.''

The bill of exceptions, after reciting the evidence and certifying that the matter so recited ''was all the evidence offered or heard at the trial of the above entitled cause,'' merely has this note concerning the verdict:

''THE COURT: Gentlemen of the jury, I give you these instructions:

''The court instructs the jury to find the issues for the plaintiff. You will all sign the form of the verdict handed you by the Bailiff. To which action of the court in so instructing the jury to find for the plaintiff, the

defendant by his counsel then and there duly excepted.''

Following this in the bill of exceptions is only the written motion by the defendant for a new trial, which includes a prayer that ''the verdict of the jury be set aside,'' the overruling of said motion and exceptions thereto, and the allowance of the appeal.

In this court on the appeal, the defendant has assigned as error the refusal of the trial court to grant a continuance for the purpose of securing witnesses; its refusal to admit proper evidence for the defendant; its striking out certain proper evidence after it had been admitted; its admission of improper evidence for the plaintiff; *its instructing the jury to find the issues for the plaintiff;* its refusal to instruct them for the defendant; and ''that the verdict was contrary to the law and the evidence.''

In view of the fact that on June 17, 1893, the Legislature enacted this statute, still in full force:

''*An Act to provide a trial by jury in all cases where a judgment may be satisfied by imprisonment.*

''Section 1. Be it enacted, etc., That no person shall be imprisoned for non-payment of a fine or a judgment in any civil, criminal, *quasi* criminal, or *qui tam* action, except upon conviction by jury. Provided: that the defendant or defendants in any such action may waive a jury trial by executing a formal waiver in writing; Provided, further, that this provision shall not be construed to apply to fines inflicted for contempt of court; and provided, further, that when such waiver of jury is made, imprisonment may follow judgment of the court without conviction by a jury''—(which Act was afterwards re-enacted without material change as a part of the Justice and Constable Act of June 26, 1895, so that it stands repeated on the statute books;),—we cannot see how the Criminal Court had power to enter a money judgment or fine providing in express terms for imprisonment until it is paid, without a verdict of a jury or a waiver of a jury in writing.

Nor even, leaving out of consideration the fact that this record nowhere shows any verdict at all (unless by implication), but only an instruction to the jury to render a verdict—an omission not commented on by counsel—do we see how, within the evident meaning and intent of this Act of 1893 an instructed verdict for the People can be considered the verdict of a jury at all. It is the voice of the judge, not of the jury, and certainly not more "the verdict of a jury" than is the finding of the judge when a jury is waived by appearance in open court and the cause submitted to the judge. But in that case, in a civil action of tort, for example, although a valid judgment might go, an execution against the body could not be issued on it, and if issued would be quashed. Swan v. Mulherin, 67 Ill. App. 77. It was the evident intent of the law in *all* cases in courts of record and in justice courts, in cases civil, criminal, *quasi* criminal or *qui tam*, with the single exception of contempt cases, to protect the defendant from what the legislature chose to consider the danger of judicial interference with his liberty on account of any money judgment or fine, unless a jury of his peers had passed on his case, or unless he had formally and by writing thrown himself on the consideration of the judge alone.

It would make the statute futile and farcical to construe it to mean that the mere formal and perfunctory signing of a verdict of conviction by a jury at the command of the trial judge, could render possible a judgment of imprisonment which the judge could not make by himself, even if a jury had been orally waived and the cause submitted to him voluntarily.

If this were a judgment in a civil cause in tort, the judgment might be valid and correct, although execution against the body could not issue on it; but it is "a fine" in a penal proceeding, and so expressly denominated. The defendant by the judgment is "fined," and the contingent imprisonment is made, and is re-

quired by the law to be made, an integral part of the judgment. That judgment must stand or fall as a whole. It must therefore be reversed as not depending on the verdict required by the statute and as the result of an improper instruction of the jury. The last error at least is covered by the eleventh assignment of error.

This is sufficient to dispose of the cause and is all that the court as a unit is willing to express in the decision of it. But as it may be tried again, the majority of the court, including the writer, think it both proper and desirable to express an opinion on the conduct of the cause and the rulings on evidence on which it turned —which rulings led the judge to the further and final one of the peremptory instruction.

The appellant Koehler was prosecuted or sued, as the appellee may choose to call it, for violating Section 9 of the Act of April 24, 1899, entitled "An Act to regulate the practice of medicine in the State of Illinois and to repeal an Act therein named."

Section 2 of that Act provides that "No person *shall hereafter begin* the practice of medicine or any of the branches thereof, or midwifery in this State without first applying for and obtaining a license from the State Board of Health to do so."

Section 9 provides that "Any person practicing medicine or surgery or treating human ailments in the State without a certificate issued by this board *in compliance with the provisions of this Act* * * * shall, for each and every instance of such practice or violation, forfeit and pay to the People of the State of Illinois, for the use of the said Board of Health, the sum of one hundred dollars for the first offense and two hundred dollars for each subsequent offense, the same to be recovered in an action of debt before any court of competent jurisdiction * * * Provided that this section shall not apply to physicians who hold unrevoked certificates from the State Board of Health issued prior to the taking effect of this Act."

The 12th section of this Act repeals the former Acts regulating the practice of medicine.

Before the trial of appellant began an application addressed to the discretion of the court was made by the defendant for a continuance on account of the alleged absence of certain medical witnesses from the city. It was denied. The People then put on as a witness a woman who was in April, 1906, an employe of the State Board of Health on a weekly salary, her duties being, as she says, "In case of a report I went out to see whether it was true, whether they were practicing medicine or not." She testified that she called on Koehler and told him she was not feeling very well. As a matter of fact, there was nothing the matter with her. Koehler told her she had stomach trouble and gave her a prescription and told her to come back in five days.

Then the People introduced, over the objection of the defendant, what purported to be a transcript of a judgment entered by John C. Everett, justice of the peace of Cook county, in a suit of the People for use of the State Board of Health against Koehler, which came to Justice Everett's court by change of venue (no complaint therefore or service of summons being shown) on November 15, 1901.

On December 21, 1901, the defendant defaulting, it appeared from said alleged "transcript" the justice found the defendant guilty of practicing medicine without a license, and fined him $100 and costs, with an order of commitment, etc. This "transcript" was introduced to prove a prior conviction. To it was appended the certificate of Justice Everett, under his seal, that it was a true and correct transcript of the judgment given by him in the suit, and that said transcript and the papers herewith accompanying contain a full and perfect statement of all the proceedings before him in the said cause. No "accompanying papers" were produced. The People then rested. A motion was made by the defendant for a dismissal of the

cause and for a peremptory instruction for the defendant, which motions were refused.

Koehler then took the stand in his own behalf, and testified that he had been practicing medicine over twenty-six years in Chicago, and that he was fifty-seven years old. He then testified that in October, 1880, he received by mail from the State Board of Health a certificate of a license to practice medicine in Illinois. Proceeding to say again that the license he received authorized him to practice medicine, a discussion ensued between court and counsel for both parties. In the course of it the witness testified that on the first Friday in June, 1886, some one broke into his room, opened his trunk and stole therefrom a medical diploma, the certificate from the State Board of Health about which he had testified, and other valuables, and that he had never been able since to locate the certificate, but had continuously practiced medicine. A further discussion following, the court finally ruled as follows:

"I am going to sustain the objection to oral testimony as to the contents of that license. He said he obtained a certificate. That does not prove a license. Your best evidence is a certified copy of a public record."

The defendant then testified that he had made an effort to get a certified copy of the certificate several times, but his attempt to prove the contents of correspondence with the Secretary of the State Board of Health was excluded as not the best evidence, as was also the result of an interview with the attorney of the State Board of Health and what happened at a meeting arranged by that attorney between the defendant and the State Board of Health in November or December, 1900. Defendant then attempted to prove that he made a request of the Secretary of the State Board of Health, after the alleged loss of the license, to furnish him a copy of it, but this was excluded.

Then counsel for Koehler stated to the court that he

desired the case be passed that he might prove by Dr. Riley, the secretary aforesaid, that records of the State Board of Health during 1880 and prior and subsequent thereto were in bad shape, and that after four years work Dr. Riley still found ninety cases of licenses of which there was no record. Most of these licensees, it was stated, had secured a *mandamus* to get a copy of their license in the record.

Counsel for the People said: "I have gone over this matter with Dr. Koehler and his attorney, and they had ample time to *mandamus*."

Whereupon the court said, in effect: "Suppose all that you expect to prove by Dr. Riley is admitted, I could not from those statements continue the case."

The court then, on the motion of the prosecutor, struck out, "everything in Koehler's testimony in which he uses the word license or claims to have received a license, on the ground that it would not be competent for him to testify as to what the paper which he claims to have received was, but the paper speaks for itself."

After this Koehler, on redirect examination, attempted to prove that after graduation at a medical college he had enclosed his diploma and the legal fee to the Board of Health with certain affidavits (these being the requirements of the Act of 1877 about the practice of medicine in Illinois), and about five days afterward received a license. The word license being objected to, it was stricken out; the witness then said it was a document, but this was also stricken out, as was also his statement, again repeated, that he received a certificate from the Board of Health.

The peremptory instruction for the People followed, which compelled the signing of a verdict assessing the fine provided for a second or subsequent offense.

The majority of the court think the so-called "transcript" certified by Justice Everett insufficient to prove anything. If this "transcript," certified to be a "*statement* of the proceedings*," is to be considered equiv-

alent to a ''certified *copy* of the proceedings'' before the justice, and competent evidence under Section 17 of the Statute on Evidence of 1872, it nevertheless fails to prove the judgment, because no service on or jurisdiction of the person of the defendant is shown. As Judge Breese said in Willoughby v. Dewey, 54 Ill. 266, when deciding on the competency of a justice's docket—''Competency of evidence is one thing—what it may prove is an entirely different thing.''

As this ''transcript'' did not prove a prior conviction, the judgment was erroneous.

But beyond this we think that the court erred in the exclusion of evidence and in striking out those statements of the defendant tending to prove that he had conformed to the requirements of the law of 1877 in relation to procuring a license to practice medicine and had secured one, the certificate of which had since been stolen from him.

We think the question was whether he had ever received a license—not what the contents of the certificate of that fact were; and that an elaborate discussion of primary and secondary evidence is therefore out of place. Judge Cartwright in The People v. Langdon, 219 Ill. 189, says that the Act of 1899 is penal in character and is to be strictly construed, although not with such technicality as to defeat its object.

While it is true that under the doctrine of Williams v. People, 121 Ill. 84, it may properly be held that the burden of proving that the defendant came under the proviso or exception of Section 9 of the Act of 1899, was on the defendant, we think that burden is carried by the proof that on compliance with the requirements of the law of 1877 a ''license'' or ''leave'' was granted, the certificate of which was afterward lost.

Under a ''penal statute, to be strictly construed,'' and ''without such technicality as to defeat its object,'' we think the burden after such proof would shift back to The People to prove the falsity of defendant's claim.

It ought, under the theory of The People in this case

about the public records of public bodies, to be peculiarly within the power of the Board of Health to do this, if it be the fact.

The case of Rhind v. Wilkinson, 2 Taunton, 237, is not applicable. That was not a prosecution on a penal statute against a person claiming, adversely to the prosecution, that he had a license to carry on an occupation or trade, but an action on some contracts of insurance by a person not entitled to recover unless he showed a license from the King in Council allowing and authorizing the particular voyage the lost ship made. He was obliged to show both its existence and its terms to recover, and by the best evidence obtainable, which was a copy or register of it.

We do not intend by this opinion to lay down general rules regarding the amount or burden of proof in "license" cases, so-called. We are treating of the evidence in and of the circumstances of this case alone.

The judgment in this cause is reversed and the cause remanded to the Criminal Court.

*Reversed and remanded.*